### JOHNSON CO. v. PENNSYLVANIA STEEL CO.

(Circuit Court of Appeals, Third Circuit. October 28, 1895.)

#### No. 20.

PATENTS—INVENTION—STREET-RAILWAY SWITCH.

The Moxham patent, No. 333,474, for a railway switch for street cars, and which covers a device that is merely an adaptation of a previous railroad switch, is void for want of invention over the previous patent of May, 1885, to the same inventor, for a switch intended for the same purpose. 67 Fed. 940, affirmed.

'Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was a bill in equity by Johnson Company against the Pennsylvania Steel Company for alleged infringement of a patent for a street-railway switch. The patent was held invalid by the circuit court, and the bill dismissed. 67 Fed. 940. Complainant appeals.

Geo. J. Harding, for appellant.

Joshua Pusey, for appellee.

Before SHIRAS, Circuit Justice, ACHESON, Circuit Judge, and BUTLER, District Judge.

BUTLER, District Judge. The plaintiff, as assignee, sues to recover compensation for infringement of letters patent No. 333,474, issued to Arthur J. Moxham, December 29, 1885, "for railroad switches."

The only question for consideration is, Does the patented device show invention?

Railroad switches containing the same elements were old. A fair sample of them is shown by the Reynolds' model. Further reference to the state of the art is rendered unnecessary by the plaintiff's admission that Moxham did no more than change the "cutting and fitting together" of the old parts, as shown by the model of his device, so as to adapt the old switch to use in street railroads. As said in the plaintiff's brief, "it is the difference of cutting and fitting in which both the utility and invention of Moxham's device reside." The old switch, which had long been employed on steam roads, was not adapted to use on streets, or other public highways, as without change in structure it would seriously interfere with ordinary travel, if not be dangerous to the passage of common vehicles. Moxham made such change by varying the cutting and fitting of the parts. If we were left to a comparison of the old switch, as shown by the Reynolds' model, with the plaintiff's, and the testimony respecting them, there might be room for doubt at least whether the change exhibited does not show invention; and in such case the presumption arising from the judgment of the patent office should prevail. The adaptation of the old switch to the new use was very complete; and the patentee's work conferred an important service on the public. Others had attempted such adaptation, as appears by the device used in San Francisco, with but partial success. The defendant acknowledges the value of Moxham's work by manufacturing and selling his switches. We are not left, however, to a comparison with the old steam-road switches, and the evidence above referred to. The device involved here is not the first fruit of Mr. Moxham's efforts to adapt the old switch to street railroads. In May 1885 he obtained a patent for switches intended for this use; and the question now arises does the difference between the later device, here involved, and the former, covered by his previous patent, show invention? We are constrained to believe that it does not. Here again, as the plaintiff says, the only difference between the two devices, is in "cutting and

fitting" the parts; and we are unable to see any material difference in this respect. In the earlier device a guard is constructed on the outer rail, which is omitted on the later one, and this (which is conceded to be immaterial) is the only substantial difference we can discover. Barring this difference the descriptive language of the specifications and claims in each patent, as well as the model of the two devices, are substantially identical.

The decree is therefore affirmed.